## Sheffield v. Sheffield

*Lawrence C. Zeger*, for plaintiff.
No appearance for defendant.

KELLER, *J.*, June 16, 1978—This action in divorce was commenced by the filing of a complaint alleging indignities on June 14, 1977, and the same was served upon defendant on June 15, 1977. On August 1, 1977, counsel for plaintiff moved for the appointment of a master and on August 2, 1977, Gary D. Wilt, Esq. was appointed master and qualified for his commission on August 3, 1977. The master set August 29, 1977, at 2:00 p.m. at his law office in McConnellsburg, Fulton County, Pa., as the date, time and place for hearing and notice was served upon defendant by regular mail deposited in the United States mail August 10, 1977, and by acceptance of service of notice by counsel for plaintiff on August 10, 1977. The hearing was held as scheduled and plaintiff appeared with her counsel. Defendant neither appeared in person nor by counsel. On January 3, 1978, the time for the master to file his report was extended nunc pro tunc for a period of 90 days from November 2, 1977. On January 13, 1978, counsel for plaintiff accepted service of the master's notice that the report of the master would be filed in the office of the prothonotary on January 19, 1978.

The master's report and appendix to the master's report was filed in the Office of the Prothonotary of Fulton County on January 19, 1978. The master recommended that plaintiff be denied a divorce on the grounds that:

1. The evidence produced by plaintiff was insufficient to establish that defendant's conduct constituted indignities.

2. The evidence established that the parties had entered into a collusive agreement to obtain the divorce because:

(a) Defendant herein, Norman Sheffield, had commenced an action in divorce to no. 34, June Term, 1973, and Norman Sheffield and Delores Lenora Sheffield, plaintiff herein, had filed their petition for the discontinuance of that divorce action on the grounds that the parties had "amicably adjusted their differences . . . and agree to discontinue proceedings, . . . " On May 17, 1977, an order was signed by this court discontinuing the said divorce action.

(b) Counsel for plaintiff in the above captioned matter had appeared as counsel for Norman Sheffield in the earlier divorce action.

On January 30, 1977, counsel for plaintiff filed exceptions to the report of the master. This matter was argued before the court en banc on April 18, 1978. The matter is now ripe for disposition.

Notwithstanding the fact that the master had the opportunity to see and hear the witnesses and thus determine their credibility, his findings of fact are not binding either on the court of common pleas or on the appellate court. It is the duty of the reviewing tribunal to consider the evidence afresh and to make its own findings de novo: 3 Freedman, Law of

Marriage and Divorce in Pennsylvania, 1267, §654 (2d ed. 1957).

"The question in a divorce case is not whether there was evidence to support the findings of the master; it is the duty of the court to make its own independent and careful investigation of the evidence to ascertain whether it does in truth establish a legal cause for divorce . . . True, the master's report is entitled to the fullest consideration because of his personal contact with the witnesses, but it does not come into court with any preponderating weight or authority which must be overcome by the opposing party." Langeland v. Langeland, 108 Pa. Superior Ct. 375, 379, 380, 164 Atl. 816 (1933).

We have reviewed with great care the notes of testimony; the findings of fact and opinion of the master; and the briefs and arguments of counsel for plaintiff. We have de novo considered the evidence, the probabilities and improbabilities of the testimony of the witnesses.

Plaintiff has the burden of proving by a preponderance of the evidence not only that defendant did engage in a course of conduct constituting indignities from which an inference of his settled hate and estrangement may be deduced, but also that plaintiff was an innocent and injured spouse whose life was made burdensome and condition intolerable by those indignities.

In this case, we find a classic "runaway witness." After reading and re-reading at least four times the testimony of plaintiff, we find ourselves utterly confused as to when and at what times during this troubled marriage defendant did what precise things to plaintiff. We gather that at some period or

periods during the 22 years of marriage there were several years of happiness or relative happiness. However, it is unclear whether this occurred at the beginning of the marriage and/or during one or more reconciliations subsequent to the commencement of the first divorce action by Mr. Sheffield. Mrs. Sheffield's repeated suggestions that her counsel or the master confirm her testimony by asking others, indicates the availability of witnesses to a variety of the instances that she testified to, including her own physical condition. However, none of these witnesses were called and no explanation was given for the failure to present them. The one corroborating witness called by plaintiff presented primarily hearsay testimony and provided very little by way of corroboration of the indignities allegedly committed by defendant.

An overview of plaintiff's evidence leads us to suspect that defendant was guilty of engaging in a course of conduct constituting indignities. However, mere suspicion is insufficient to sustain the burden of proof imposed upon plaintiff. Therefore, we must agree with the conclusion of the master that plaintiff has failed to introduce the requisite evidence to support the granting of a decree in divorce. While we would be justified on the basis of this conclusion in dismissing the complaint, we nevertheless feel it would be appropriate to give plaintiff an opportunity to clarify her own testimony and introduce the evidence of corroborating witnessess at another hearing before the master. We will, therefore, remand this case to the master for an additional hearing.

Turning now to the question of collusion, we are not prepared to conclude that the belated petition of Mr. and Mrs. Sheffield for the termination of the

1973 divorce action points unerringly to a collusive agreement. However, we do share the master's concern over the appearance of the conduct of the parties, and Mrs. Sheffield's testimony that the parties had agreed to discontinue the earlier divorce action so she could bring the present proceeding. Due to the confusing testimony introduced by plaintiff as to what transpired between the time of the commencement of the first divorce action and its termination, it is unclear on what terms and at what times the parties reconciled; how long the reconciliations lasted and the precise reason or reasons for the breakdown of the reconciliation or reconciliations. Perhaps if clear and admissible evidence were introduced at the second hearing before the master, it could be concluded that Norman Sheffield had, in fact, abandoned the earlier divorce action or concluded that he did not have a meritorious cause of action. In either of those events the parties joinder in the petition to discontinue might better be determined to be in recognition of a fait accompli rather than suggesting existence of a collusive agreement. Such question is, of course, preliminarily for the determination of the master.

With regard to the master's conclusion that representation of Mr. Sheffield in the prior divorce action and Mrs. Sheffield in the current proceeding by the same counsel is prima facie evidence of collusion, we find no merit. The former action had indeed been effectively terminated by the court order of May 17, 1977. After that termination we are unaware of any law that would raise an inference or presumption of collusion from counsel's representation of the former adverse party. We are, of

course, not addressing ourself to the issue of whether this involves a violation of the Code of Professional Responsibility.

## ORDER

Now, June 16, 1978, the within matter is referred back to Gary D. Wilt, Esq., master, for the purpose of holding an additional master's hearing to permit plaintiff to clarify testimony heretofore introduced and also to call additional corroborating witnesses. In the event plaintiff declines to attend the hearing scheduled by the master, the master shall return the record of the proceedings to the court for action on the recommendation heretofore made.